FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 2 2005 ★

LONG ISLAND OFFICE

GSG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

05-0275M

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

WILLIAM FREDERICK VERDUN and
ROBERT E. WASHINGTON,

                Defendants.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(T. 18, U.S.C. § 371)

EASTERN DISTRICT OF NEW YORK, SS:

       RYAN MAHAR, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service ("Secret Service"), duly appointed according to law and acting as such.

       Upon information and belief, on or about and between February 1, 2005 and February 25, 2005, both dates being approximate and inclusive, within the Eastern District of New York, the defendants WILLIAM FREDERICK VERDUN and ROBERT E. WASHINGTON, together with others, did conspire to buy, sell, exchange, transfer, receive or deliver any false, forged, counterfeited, or altered obligations or other securities of the United States, to wit, counterfeit $100 bills, with the intent that the same be passed, published, or used as true and genuine, in violation of Title 18, United States Code, Section 473.

       (Title 18, United States Code, Section 371)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the Secret Service for approximately 2 years. During that time, I have investigated the production and sale of counterfeit United States currency, and have been trained in the detection and manufacture of counterfeit currency. My training and experience enables me to tell counterfeit United States currency apart from genuine United States currency.

2. On February 1, 2005, Secret Service agents, including myself, conducted an undercover operation to purchase approximately $10,000 in counterfeit United States currency from the defendant WILLIAM FREDERICK VERDUN in exchange for $5,000 in genuine United States currency. The operation involved the use of a confidential informant ("CI") and was surveilled by Secret Service agents, including myself. During the undercover operation, the CI was wearing an audio transmitter as well as an Eagle recorder. The audio transmitter was monitored by Secret Service agents throughout the operation. Prior to the operation, the CI was provided with approximately $5,000 in genuine United States currency, the serial numbers of which had previously been recorded by Secret Service agents. The CI was also searched prior to attempting the transaction with the defendant WILLIAM

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

3

FREDERICK VERDUN to ensure that the CI did not possess any counterfeit currency.

3. On February 1, 2005, during a series of consensually recorded telephone calls, the CI negotiated the purchase of $10,000 in counterfeit United States currency with the defendant WILLIAM FREDERICK VERDUN. The defendant WILLIAM FREDERICK VERDUN directed the CI to meet him that evening in the vicinity of 134-49 166th Place, Jamaica, New York. At approximately 8:00 p.m. on February 1, 2005, under the surveillance of Secret Service agents, the CI drove in his own vehicle to that location to meet with the defendant WILLIAM FREDERICK VERDUN. Upon arriving at 134-49 166th Place, Jamaica, New York, the CI met the defendant WILLIAM FREDERICK VERDUN, who then entered the CI's vehicle and directed the CI to drive to the vicinity of Parsons Boulevard and Union Turnpike in Queens, New York. According to the defendant WILLIAM FREDERICK VERDUN, his source for counterfeit currency was located in that area. The CI then provided the defendant WILLIAM FREDERICK VERDUN with the $5,000 in genuine United States currency that Secret Service agents had previously provided the CI. After receiving the money from the CI, the defendant WILLIAM FREDERICK VERDUN counted it and asked the CI for an additional $100, which the CI was unable to provide.

4. Once the CI and the defendant WILLIAM FREDERICK VERDUN arrived in the vicinity of Parsons Boulevard and Union Turnpike in Queens, New York, the defendant WILLIAM FREDERICK

4

VERDUN exited the CI's vehicle.  Approximately 20 minutes later, the defendant WILLIAM FREDERICK VERDUN returned to the CI's vehicle.  The CI then drove the defendant WILLIAM FREDERICK VERDUN back to 134-49 166th Place, Jamaica, New York.  During the drive, the defendant WILLIAM FREDERICK VERDUN informed the CI that he had $10,000 in counterfeit United States currency, all of which was in denominations of $100.  He then took $200 in counterfeit United States currency for himself and provided the remainder to the CI.

5. At approximately 9:00 p.m. that evening the CI dropped the defendant WILLIAM FREDERICK VERDUN off at 134-49 166th Place, Jamaica, New York.  Immediately thereafter, I met with the CI and retrieved the $9,800 in counterfeit currency that the CI had purchased from the defendant WILLIAM FREDERICK VERDUN.  I have examined the $9,800 in $100 bills the CI purchased from the defendant WILLIAM FREDERICK VERDUN, and have confirmed that these bills are in fact counterfeit United States currency.

6. On February 24, 2005, during a series of consensually recorded telephone conversations, the CI attempted to negotiate another transaction with the defendant WILLIAM FREDERICK VERDUN to purchase approximately $10,000 in counterfeit United States currency in exchange for $5,000 in genuine United States currency.  During these telephone conversations, the defendant WILLIAM FREDERICK VERDUN stated, in sum and substance, that his source for counterfeit United States currency was

5

unavailable to complete the deal until approximately 10:30 p.m. that evening. At the direction of Secret Service agents, the CI then informed the defendant WILLIAM FREDERICK VERDUN that he would contact him the following day to complete the transaction.

7.  On February 25, 2005, at the direction of Secret Service agents, the CI again contacted the defendant WILLIAM FREDERICK VERDUN by telephone to negotiate the purchase of approximately $10,000 in counterfeit United States currency. During a series of consensually recorded telephone conversations, the defendant WILLIAM FREDERICK VERDUN informed the CI, in sum and substance, that he needed to plan things out as he had to purchase an additional amount of counterfeit United States currency from his source for "Bob," who Secret Service agents later identified as the defendant ROBERT E. WASHINGTON. The defendant WILLIAM FREDERICK VERDUN then agreed to meet the CI at 3:00 p.m. on the afternoon of February 25, 2005 in the vicinity of 165th and 89th Avenue, Jamaica, New York to complete the transaction. As with the February 1, 2005 transaction, prior to this transaction, the CI was provided with $5,000 in genuine United States currency, the serial numbers of which were previously recorded by Secret Service agents. He was also equipped with audio transmitting and recording devices and checked for any counterfeit United States currency.

8.  Under the surveillance of Secret Service agents, the CI then met the defendant WILLIAM FREDERICK VERDUN at the intersection of 165th Street and 89th Avenue, Jamaica, New York.

6

At approximately 3:30 p.m., the CI exited the vehicle in which he arrived and met the defendant WILLIAM FREDERICK VERDUN on 165th Street. During this brief meeting, the CI provided the defendant WILLIAM FREDERICK VERDUN with the $5,000 in genuine United States currency that he had received from Secret Service agents. Under the surveillance of Secret Service agents and other law enforcement agents, the defendant WILLIAM FREDERICK VERDUN then walked to a nearby Rite Aid Pharmacy where he entered a green BMW and met another individual. A short time later, the defendant WILLIAM FREDERICK VERDUN exited the green BMW.

9. At approximately 6:30 p.m. on February 25, 2005, under the surveillance of Secret Service and other law enforcement agents, the defendant WILLIAM FREDERICK VERDUN met the defendant ROBERT E. WASHINGTON in the vicinity of 165th Street and Hillside Ave., Jamaica, New York, and was observed providing him with a package. Following this transaction, Secret Service agents, including myself, attempted to arrest the defendant ROBERT E. WASHINGTON. After identifying ourselves as law enforcement, the defendant ROBERT E. WASHINGTON attempted to elude us, but was subdued a short time later. In the process, the defendant ROBERT E. WASHINGTON discarded the package he received from the defendant WILLIAM FREDERICK VERDUN. The package was retrieved by Secret Service agents and was confirmed to contain $6,000 in counterfeit United States currency, all in denominations of $100.

10. At the time of his arrest the defendant WILLIAM FREDERICK VERDUN had in his possession a large quantity of counterfeit United States currency, all in denominations of $100. I have examined this currency and confirmed that it is, in fact, counterfeit United States currency.

11. Following his arrest, after being advised of his Miranda rights and waiving them, the defendant WILLIAM FREDERICK VERDUN admitted that he had picked up a total of $15,800 in counterfeit United States currency from his source on February 25, 2005, and that he intended to deliver $9,800 of it to the CI, and the remainder, $6,000, to the defendant ROBERT E. WASHINGTON.

WHEREFORE, your deponent respectfully requests that the defendants WILLIAM FREDERICK VERDUN and ROBERT E. WASHINGTON be dealt with according to law.

_____
RYAN MAHAR
Special Agent
United States Secret Service

Sworn to before me this
26th day of February, 2005

_____
United States Magistrate
Eastern District of New York